IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Charles W. Lipp,                                    :

                        Plaintiff          :      Civil Action 2:09-cv-991

          v.                               :      Judge Frost

Michael J. Astrue,                         :      Magistrate Judge Abel
Commissioner of Social Security,
                        Defendant          :

**REPORT AND RECOMMENDATION**

Plaintiff, Charles W. Lipp brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his applications for Social Security Disability and Supplemental Security Income

benefits.  This matter is before the Magistrate Judge for a report and recommendation

on the administrative record and the parties' merits briefs.

**Summary of Issues.**  Plaintiff Lipp maintains that he is disabled due to severe

asthma, high blood pressure and anxiety.  (R. 107, 122-23, 144.)  Plaintiff argues that the

decision of the Commissioner denying benefits should be reversed because:

- The previous administrative law judge was medically called away from this case.
- The replacement administrative law judge did not familiarize himself with this file and the documents at hand prior to the hearing.
- Medical testimony supported an irrefutable conclusion that Mr. Lipp met or equaled the medical listing.
- Psychological testimony supported an irrefutable conclusion that Mr. Lipp met or equaled the psychological listing.
- It would be arbitrary and a serious abuse of discretion to either ignore or totally discount the medical, psychological and factual basis upon which this disability should have been determined.

- If Mr. Lipp is either denied disability or at the very least an in-person rehearing, a travesty would have occurred and the system would have failed him.

**Procedural History.** Plaintiff Lipp filed his applications for disability insurance benefits on November 5, 2004 and supplemental security income on October 12, 2004, alleging that he became disabled on April 14, 2004, at age 43. (R. 17, 75, 79, 373.)[1] The applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On August 6, 2008, an administrative law judge held a video hearing at which plaintiff, represented by counsel, appeared and testified. (R. 391-402.) In addition, Plaintiff's treating physician, Dr. Tanzer testified. (R. 402-08, 424-27.) A medical expert and vocational expert also testified. (R. 409-23; 427-31.) On September 23, 2008, the administrative law judge issued a decision finding that Lipp was not disabled within the meaning of the Act. (R. 17-26.) On September 4, 2009, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 6-9.)

**Age, Education, and Work Experience.** Lipp was born March 20, 1961. (R. 140.) He has a high school education. (R. 150.) He attended college for a couple of years. (R. 199 and 392.) Lipp previously worked as an custodian/maintenance and truck driver. (R. 96-103.)

---

[1] The administrative record submitted to the Court apparently does not contain the applications for disability insurance benefits or supplemental security income, although it does contain a printout of the dates they were filed. (R. 75.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Lipp's testimony as follows:

> The claimant testified that he lives alone and is able to care for himself. He stated that he cuts the grass, cares for his dog, does his own laundry, and washes the dishes and cooks. He shops "now and then." The claimant walks twice a day..... The claimant testified that he went fishing twice this summer. He has no problems getting along with people and has not had any legal problems or problems with authorities..... The claimant has a driver's license and drives. He is able to get to scheduled doctor's appointments.

(R. 21.)

> He also testified that he walks twice a day and is able to lift up to thirty pounds at a time.

(R. 23.)

**Medical Evidence of Record.** The relevant medical evidence of record is summarized as follows:

Mount Carmel Medical Center. Lipp sought emergency room treatment on March 23, 2004, following an asthma attack after exposure to ammonia at work and complaining of shortness of breath. He was treated and released with an inhaler. (R. 173-74.) Lipp returned to the emergency room on March 26, 2004, with complaints of chest tightness and shortness of breath. A chest x-ray was normal. He was treated, given medication and diagnosed with an acute asthma exacerbation before being sent home. (R. 170-72.)

Lipp sought emergency room treatment in April 2005, complaining of chest pain; he was diagnosed with asthma exacerbation and atypical chest pain and released. (R.

3

168-69, 176.)

James Johnson, D.O.  Lipp treated with family practice physician, Dr. Johnson from March 2004 through July 2007.  (R. 202-51, 293–372.)  Upon initial examination, Dr. Johnson diagnosed Lipp with asthma and high blood pressure.  (R. 241.)  Lipp returned to Dr. Johnson's office later that day with wheezing, and Dr. Johnson noted that Lipp was very anxious.  He gave Lipp a breathing treatment, added the diagnosis of anxiety disorder, and prescribed anti-anxiety medication.  (R. 244.)

Lipp reported to Dr. Johnson on April 12, 2004, that he was depressed and stressed about having to find another line of work.  Dr. Johnson diagnosed Lipp with depression and added an anti-depressant to his medication regime.  (R. 239.)  On April 14, 2004, Dr. Johnson prepared a "To whom it may concern" letter noting that Lipp suffered from frequent flare-ups of his severe asthma, and that he should avoid exposure to dust and chemicals.  (R. 238.)  On April 26, 2004, Lipp reported that he had stopped taking his anti-depressant because it caused increased crying and he used his anti-anxiety medication sparingly.  (R. 236.)  In August 2004, Dr. Johnson noted that Lipp needed to "avoid chemical irritants by finding a new position of employment." (R. 229.)  Lipp complained of increased anxiety in October 2004, but Dr. Johnson noted only mild apprehensiveness.  (R. 224.)  Also in October 2004, a chest x-ray was normal.  (R. 162.)

In January 2005, Lipp reported that he used his anti-anxiety medication sparingly, and that he had stopped using his anti-depressant.  (R. 217.)  In February

4

2005, Dr. Johnson encouraged Lipp to look for work.  (R. 216.)  By April 2005, Lipp was

very anxious and Dr. Johnson prescribed Valium.  (R. 212.)

On June 13, 2005, Dr. Johnson reported that Lipp had asthma, hypertension and

anxiety with episodic shortness of breath and wheezing, as well as anxiousness.  (R.

202-06.)  Dr. Johnson opined that Lipp's limitations are due to situations of inhaled

exposures.  *Id.*  Dr. Johnson also felt Lipp was limited to his lack of education.  *Id.*

On October 12, 2005, Dr. Johnson's notes indicated that Lipp was having trouble

finding employment.  He encouraged Lipp to find employment.  (R. 332.)  On October

13, 2005, Lipp complained of night tachycardia and numbness in his left lower arm.

Lipp stated that when he was working he had increased anxiety and said that he felt he

was not able to work and he needs to be disabled.  (R. 330.)

In 2006, Dr. Johnson assessed that Lipp's respiratory condition was associated

with his anxiety and/or depression.  (R. 321, 325-26.)  In May 2007, Dr. Johnson found

increased anxiety and suspected that Lipp might be "acting out." (R. 301-02.)  By July

2007, Dr. Johnson added the diagnosis of post-traumatic stress disorder (PTSD).  (R.

294.)

H.C. Nataraj, M.D.  Lipp treated with allergy and asthma specialist Dr. Nataraj

beginning in November 2004.  Dr. Nataraj diagnosed Lipp with chronic rhinitis, reactive

airway disease and insect allergy, and prescribed a variety of medication.  (R. 182, 188.)

A pulmonary function test was normal.  (R. 193.)  In December 2004, Lipp reported to

Dr. Nataraj that he was better.  Dr. Nataraj dropped the insect allergy diagnosis.  (R.

5

181.) Another pulmonary function test was normal.  (R. 190.)  In April 2005, Lipp reported only occasional asthma symptoms.  (R. 180.)

Mohammed Shareef, M.D.  Pulmonary specialist Dr. Shareef examined Lipp in connection with his worker's compensation claim in October 2004.  (R. 163-66.)  Plaintiff presented with shortness of breath.  Plaintiff reported that he worked as a custodian and when he went to the clay room for supplies he was overcome by a lot of ceramic dust and he was exposed to heavy dust.  He developed progressive shortness of breath, wheezing, a cough and congestion.  His symptoms worsened even with medication and breathing treatments.  Upon examination, Dr. Shareef detected "good breath sounds bilaterally" with "few scattered wheezing."  (R. 164.)  Dr. Shareef also reviewed pulmonary function studies from July 2002, which he felt were suggestive of mild obstructive ventilatory defect.  *Id.*  Dr. Shareef diagnosed Lipp with reactive airway dysfunction syndrome and chronic bronchitis.  Dr. Shareef opined that Lipp is in the class II, which is a 10-25% of impairment of the whole person, since his FEV1 is more than 61%.  Dr. Shareef felt that Lipp could work in jobs where he was not exposed to chemicals or dust.  (R. 165.)

Park Street Family Practice.  In December 2004, Douglas Wallace, M.D., noted that Lipp had asthma with intermittent episodes of exacerbation featuring wheezing and shortness of breath.  Dr. Wallace opined that Lipp should not be considered disabled. (R. 152-54.)

James C. Tanley, Ph.D.  Consulting psychologist Dr. Tanley examined Lipp in

6

June 2005 at the request of the Bureau of Disability Determination. (R. 199-201.) Lipp alleged that he had been anxious and depressed since his asthma attack at work in March 2004. (R. 199.) Mental status testing suggest that his level of functional intelligence was at least Low Average, perhaps Average. Dr. Tanley diagnosed Lipp with a chronic adjustment disorder with mixed anxiety and depression, and assigned him a Global Assessment of Functioning (GAF) score of 60. (R. 201.) Dr. Tanley opined that Lipp's ability to relate to others was unimpaired; that his ability to understand and follow simple instructions and to maintain attention to perform simple, repetitive tasks appeared to be within the context of Low Average to Average range intelligence based on the mental status examination. Lipp's ability to withstand the stress of daily work was moderately impaired. *Id.*

Patricia S. Semmelman, Ph.D. In July 2005, state agency reviewing psychologist, Dr. Semmelman opined that Lipp had no difficulties in social functioning, mild restrictions in his activities of daily living and moderate difficulties with maintaining concentration, persistence or pace. She also opined that Lipp was capable of "at least time step tasks" and that there was no evidence that he would have difficult working with others. (R. 252-69.)

Steven Tanzer, D.O. The record contains treatment notes from Dr. Tanzer from May 22, 2007 to April 3, 2008. Dr. Tanzer generally diagnosed Lipp with chronic obstructive pulmonary disorder (COPD) and PTSD and provided medication. (R. 275-79, 282-84, 286, 288, 295-96, 298-99.)

7

Dr. Tanzer testified at the administrative hearing that he has been treating Lipp for hyperactive airway disease and his anxiety disorder.  Dr. Tanzer opined that Lipp met Listing 12.06 (a) (1)(2)(3) and (5).  Dr. Tanzer reported that Lipp has difficulty in maintaining activities of daily living which are "fairly severe, but with therapy he has shown mild improvement."  Dr. Tanzer testified that based upon his observations in his office environment and by history, Lipp's social functioning was very limited.  Dr. Tanzer also testified that Lipp was "very limited" in his ability to maintain concentration, persistence or pace.  Dr. Tanzer further testified that he had no opinion as to whether or not Lipp suffered from a mental disorder or anxiety prior to beginning his treatment of Lipp in 2007 other than as provided by the patient and medical record history.  Dr. Tanzer testified that Lipp has been suffering from this level of anxiety for a little over a year.  Dr. Tanzer was not familiar with the terms "GAF" or "Global Assessment of Functioning." (R. 402-08, 424-27.)

Beal Lowe, Ph.D.  Dr. Lowe examined Lipp in July 2007 to determine if he is experiencing any diagnosable conditions and whether these conditions are related to his 2004 industrial injury.  (R. 289-92.)  Lipp reported that when his breathing problems occur, his anxiety increases.  (R. 291.)  Dr. Lowe diagnosed Lipp with anxiety disorder due to a general medical condition; major depressive disorder, single episode, severe; and post traumatic stress disorder, and assigned him a GAF score of 55.  (R. 292.)  Dr. Lowe opined that Lipp's conditions were found to be the cause of his recent inability to continue his part -time job as a cashier.  The anxiety and depression resulted from the

8

increased breathing problems associated with his reactive airway disease and the flu. According to Dr. Lowe, Lipp was totally disabled from work and recommended psychiatric care.  (R. 292.)

On November 1, 2007, Dr. Lowe wrote to plaintiff's attorney disagreeing with a psychiatric evaluation of Lipp by De. Richard Clary, a psychiatrist.  Dr. Lowe said that his diagnoses were supported by three instruments he administered to Lipp–the Burns Anxiety Inventory, Beck Depression Inventory, and PSTD interview–as well as his clinical examination.  (R. 281.)

On July 27, 2008, Dr. Lowe wrote to plaintiff's attorney that although he attended an earlier, cancelled hearing, he was unable to attend the August 8, 2008 hearing. He state his strong belief that "Mr. Lipp is totally disabled by anxiety and depression which are a result of his ongoing physical problems."  (R. 38A.)  He said that Lipp feared choking and smothering because of his breathing problems and his fear of exposure to noxious substances.  Dr. Lowe found this fear reasonable based on his severe pulmonary illness and his observations of him during treatment.  Dr. Lowe further asserted his belief that Lipp's "physical problems alone prevent him from sustaining any work on a consistent, day after day basis."  *Id.*

Although Lipp testified that he saw Dr. Lowe twice a month (R. 399), there are no office notes of those treatment sessions in the record.

**Medical Expert Testimony.**  Sheldon J. Slodki, M.D. testified as the medical

expert at the administrative hearing.  Dr. Slodki, testified that after reviewing the record,  Lipp suffered from the conditions of asthma, COPD, hypertension, obesity, allergies, depression, PTSD anxiety and headaches.  (R. 410.)  Dr. Slodki opined that none of his physical conditions meet or medically equal a Listed impairment.  *Id.*  Dr. Slodki testified that the record did not show that Lipp was having severe asthmatic attacks, the diagnosis from his primary physician, Dr. Tanzer, was primarily the anxiety problem.  (R. 418.)  Dr. Slodki further testified that Lipp's pulmonary function test results were all virtually normal. *Id.* Dr. Slodki recommended environmental limitations, such as no concentrated exposure to fumes, odors, dust, gases, poor ventilation, and extreme cold, heat, wetness and humidity.  *Id.*  He testified that as a general rule, there were no exertional limitations for asthmatic between attacks, and pointed out that some professional athletes were asthmatics.  (R. 419.)  Dr. Slodki testified that Lipp's pulmonary condition was not sufficient enough to cause anxiety, which he based on Lipp's pulmonary function studies, and the fact that he does not meet the listing for attack frequency and hospitalizations and emergency room visits. (R. 423.)

    **Administrative Law Judge's Findings.**  The administrative law judge found that:

1.    The claimant met the insured status requirements of the Social Security Act only through June 30, 2008.

2.    The claimant has not engaged in substantial gainful activity (SUBSTANTIAL GAINFUL ACTIVITY) since April 14, 2004, the alleged onset date (20 C.F.R. § 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: Post Traumatic Stress Disorder, an anxiety related disorder, depression, chronic obstructive pulmonary disease (C.O.P.D.), reactive airway dysfunction syndrome, asthma, hypertension, obesity, and allergies (20 C.F.R. § 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift up to fifty (50) pounds occasionally and twenty-five (25) pounds frequently in medium work as defined in the regulations. Claimant must avoid concentrated exposure to extremes of cold, heat, wetness and humidity.  He must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts and gases.  Claimant must avoid concentrated exposure to poorly ventilated areas.  Claimant's work is limited to simple, routine and repetitive tasks while employed in a low stress job.  Claimant may have only occasional interaction with the public and occasional interaction with co-workers.

6.  The claimant's past relevant work as a driver, janitor, and sorter did not require the performance of work-related activities precluded by the above limitations (20 C.F.R. § §§ 404.1565 and 416.965).

7.  The claimant was born on March 20,1961 and was 43 years old, on the alleged disability onset date, which is defined as a younger individual age 18-49, (20 C.F.R. § 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SOCIAL SECURITY RULING 82-41 and 20 C.F.R. § Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 C.F.R. § 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from April 14, 2004 through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

(R. 19-25.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Lipp argues that the decision of the Commissioner denying benefits should be reversed because the replacement administrative law judge

did not familiarize himself with the file and the documents at hand prior to the hearing.

Plaintiff also argues that medical testimony supported an irrefutable conclusion that

Lipp met or equaled the medical listing.  Finally, Plaintiff contends that psychological

testimony supported an irrefutable conclusion that Lipp met or equaled the

psychological listing.[2]

**Analysis.**

A.    **Mental Impairments**

In evaluating psychiatric impairments, the Commissioner's regulations

provide that the factfinder should consider such factors as the claimant's ability to

understand, carry out, and remember simple instructions, to respond appropriately

to supervision, co-workers and usual work situations, and to deal with changes in a

routine work setting.  20 C.F.R. §404.1521(b)(3), (5), (6).  Disability is to be sequentially

evaluated.  If the claimant is not currently engaged in substantial gainful activity and

has a severe impairment, the Commissioner must determine whether the impairment

meets or equals an impairment in Subpart P, Appendix 1.    20 C.F.R. §404.1520(d).  The

signs and symptoms which would support a determination, on the basis of the

psychiatric evidence alone without reference to the claimant's age, education, and work

experience, that he suffers from a totally disabling psychiatric impairment are set out in

§§12.01 through 12.09, Subpart P, Appendix 1, Listing of Impairments.  The presence or

---

[2] Plaintiff has simply listed his allegation of error and has not supported his allegation with any specific arguments. However, the Court will attempt to address the Errors Plaintiff has raised.

13

absence of these and similar signs and symptoms is controlling, not an individual physician's opinion on the ultimate issue of disability. 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527.

The Commissioner has adopted a special procedure for evaluating mental impairments. 20 C.F.R. §404.1520a. The administrative law judge must fill out a detailed Psychiatric Review Technique Form to assist him in evaluating each factor of the appropriate psychiatric listing(s). 20 C.F.R. §404.1520a(d). He attempts to "rate the degree of functional loss resulting from the impairment(s)." 20 C.F.R. §404.1520a(b)(3). Then he determines whether the impairment is severe. 20 C.F.R. §404.1520a(c)(1). If so, he next determines whether the impairment meets or equals a listing. 20 C.F.R. §404.1520a(c)(2).

If the factfinder determines that the claimant does not meet or equal one of the psychiatric listings, he must determine whether the psychiatric impairment, considering the claimant's age, education, and prior work experience, nonetheless renders plaintiff disabled. 20 C.F.R. §404.1520a(c)(3). In making this decision, the factfinder considers the same types of evidence used to determine whether the claimant's impairment meets or equals the listings. Social Security Ruling 85-16, CCH Unemployment Insurance Reporter ¶16,086.

Both the administrative law judge's decision, and Dr. Tanzer's testimony, whom Lipp relies on, address Listing 12.06, which reads in relevant part:

In these disorders anxiety is either the predominant disturbance or it is

14

experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

15

OR

C.    Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

In this case, the administrative law judge found,

In activities of daily living, the claimant has mild restriction.  The claimant testified that he lives alone and is able to care for himself.  He stated that he cuts the grass, cares for his dog, does his own laundry, and washes the dishes and cooks.  He shops "now and then." The claimant walks twice a day.  In social functioning, the claimant has moderate difficulties.  The claimant testified that he went fishing twice this summer.  He has no problems getting along with people and has not had any legal problems or problems with authorities.  With regard to concentration, persistence or pace, the claimant has mild difficulties.  The claimant has a driver's license and drives.  He is able to get to scheduled doctor's appointments.  As for episodes of decompensation, the claimant has experienced no episodes of decompensation.  There is no evidence of any hospitalizations due to any physical or mental problems.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.  I have also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(R. 21.)  Plaintiff relies on the opinion of treating physician, Dr. Tanzer, who testified at the administrative hearing.  *See* R. 402-08, 424-27.  In weighing Dr. Tanzer's opinion, the administrative law judge gave Dr. Tanzer "some weight" in assessing Lipp's limitations, but no weight in concluding that Lipp met or equaled a listing relating to mental impairments.  (R. 23.)  The administrative law judge determined that Dr. Tanzer was not a mental health specialist, and in fact was not even familiar with the GAF scale.

16

(R. 23, 424.)  He also explained that neither Dr. Tanzer's notes or testimony support his opinion because there is no function-by-function analysis.  *Id.*

Dr. Tanzer did not conduct a mental status evaluation or perform any psychiatric tests in forming his opinion.  Dr. Tanzer, based their opinions on Lipp's subjective complaints and allegations.  (R. 23.)  Neither a treating physician's diagnosis nor his or her statement that a claimant is disabled is determinative of the ultimate disability determination under the Social Security Act.  *See Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986); *see also* 20 C.F.R. §404.1527(e)(1).

In weighing Dr. Lowe's opinion, the administrative law judge noted,

> In regard to opinion evidence, I reject the opinion of Dr. Beal Lowe who opined that the claimant was totally disabled from work, as it is not supported by the record and it contradicted by Disability Determination Services medical consultant's who determined that the claimant could perform medium exertional level work and whose opinion I give greater weight.  The claimant's functional limits appear to be a product of a sympathetic opinion and, the conditions, in part, are based upon "the flu" which along with his "reactive airway disease" kept him off work as a part-time cashier for an extended period of time at the time of the report.

(R. 23, citation to record omitted.)

The residual functional capacity determination is expressly reserved for the Commissioner.  *See, e.g.,* 20 C.F.R. §§404.1527(e)(2), 404.1546.  Where substantial evidence supports the administrative law judge's residual functional capacity assessment, the Court may not revisit that assessment.  Dr. Lowe's restrictions appear to be more extreme than would be suggested by the Lipp's treatment records and history

before the Court.[3] Accordingly, the findings of the administrative law judge in this

regard enjoy substantial support in the record.

### B. Physical Impairments

The administrative law judge based his assessment of Lipp's residual functional

capacity for physical work on the testimony of the medical expert, Dr. Slodki. In

assessing Lipp's impairments and determining functional equivalence, the admini-

strative law judge reasonably relied on the testimony of Dr. Slodki, the medical expert.

(R. 20.) In *Richardson v. Perales*, 402 U.S. 389, 408 (1971), the Supreme Court held that it

is acceptable for the administrative law judge to use a medical expert, because the

expert's primary duty is to make complex medical cases understandable to the layman

examiner. Moreover, the medical expert can offer his own opinion regarding the

claimant's condition. *See* 20 C.F.R. § 416.927(f)(2). The administrative law judge can

properly rely on the testimony of a non-examining medical expert in order to make

sense of the record. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). In addition, an

administrative law judge's reliance on the opinion of a non-examining medical expert is

proper if the expert's opinion is based on objective reports and opinions. *See Barker v.

Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *Loy v. Secretary of Health and Human Services*,

901 F.2d 1306, 1308-09 (6th Cir. 2001). Dr. Slodki testified that none of Lipp's physical

conditions meet or medically equal a Listed impairment. (R. 410.) As with his other

---

[3]As noted above at page 8, there are no treatment records from Dr. Lowe in the
record.

Errors, Lipp has failed to present any specific argument in support of his position. Plaintiff has not shown that the administrative law judge failed to apply the correct legal standards to his evaluation of Dr. Slodki's opinions or in his determination of Lipp's residual functional capacity.

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

Based on the residual functional capacity, the vocational expert testified during the administrative hearing that Lipp would not be capable of performing his past relevant work as a school custodian. (R. 429.) However, the vocational expert was asked whether jobs exist in the national economy for an individual with Lipp's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations including the following unskilled medium

19

level jobs and their numbers: assembly (38,400 jobs); production assembly (45,200 jobs); and beach assembly (5,500 jobs). (R. 25, 429-31.) Such testimony, in light of the evidence of record, constitutes reasonable support for the administrative law judge's non-disability decision.

Lipp has failed to present any specific argument in support of his position, but essentially concludes that the administrative law judge's decision was not supported by substantial evidence.

It is not the Court's role to sift through the facts and make a *de novo* determination of whether a claimant is disabled. The administrative law judge, not the Court, is the finder of fact. *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In a close case, where there is substantial evidence supporting the administrative law judge's resolution of the disputed facts, the Court must affirm even if it would likely have resolved the disputed facts in plaintiff's favor had it been a trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). There is a large zone of choice where the Commissioner's decision to deny benefits is supported by substantial evidence, and, had the Commissioner granted benefits, that decision also would have been supported by substantial evidence. *Mullen v. Secretary of Health & Human Services*, 800 F.2d 535, 548 (6th Cir. 1986) (*en banc*). In close cases, the Commissioner's decision must be affirmed so

20

long as there is substantial evidence supporting the Commissioner's fact determinations "because there is a 'zone of choice' within which the Commissioner can act, without fear of court interference." *Mullen*, 800 F.2d at 545(citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984))." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

Plaintiff also argues that he was prejudiced by the fact that the administrative law judge held the hearing by video. While taking testimony in a hearing room is preferable, the Social Security Administration adjudicates around two million applications a year. In FY2008, there were over 750,000 requests for hearings. There were substantial delays in holding hearings. In an attempt to eliminate the delay in holding hearings, more than 55,000 video hearings held in FY2008. Plan to Eliminate the Hearing Backlog, Annual Report FY2008, at pp. 1-8 (Accessed at http://www.ssa.gov/pgm/links_disability.htm ).

For good cause show, the Federal Rules of Civil Procedure permit "testimony in open court, by contemporaneous transmission from a different location." Rule 43(a), Fed. R. Civ. P. I conclude that a Social Security administrative law judge does not deny a claimant due process by taking the claimant's testimony by video facility.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary

judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel         
United States Magistrate Judge